# United States Court of Appeals for the Federal Circuit

---

**DYNCORP INTERNATIONAL, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, KELLOGG BROWN & ROOT SERVICES, INC., VECTRUS SYSTEMS CORPORATION, FLUOR INTERCONTINENTAL, INC., PAE-PARSONS GLOBAL LOGISTICS SERVICES, LLC,**
*Defendants-Appellees*

---

2020-2041

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-01133-LAS, Senior Judge Loren A. Smith.

---

Decided: August 25, 2021

---

AARON MARTIN PANNER, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, for plaintiff-appellant. Also represented by COLLIN WHITE.

WILLIAM PORTER RAYEL, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Defendant-appellee United States also represented by SARAH ELAINE HARRINGTON, ROBERT EDWARD

KIRSCHMAN, JR., PATRICIA M. MCCARTHY; DANA J. CHASE, SCOTT NICHOLAS FLESCH, GREGORY T. O'MALLEY, Contract and Fiscal Law Division, United States Army Legal Service Agency, Fort Belvoir, VA.

SETH LOCKE, Perkins Coie, LLP, Washington, DC, for defendant-appellee Kellogg Brown & Root Services, Inc. Also represented by LEE PAUL CURTIS, BRENNA DUNCAN, JULIA M. FOX; DAN L. BAGATELL, Hanover, NH.

DEANNE MAYNARD, Morrison & Foerster LLP, Washington, DC, for defendant-appellee Vectrus Systems Corporation. Also represented by SETH W. LLOYD, KEVIN P. MULLEN, MICHAEL QIAN, JAMES A. TUCKER.

ANDREW E. SHIPLEY, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for defendant-appellee Fluor Intercontinental, Inc. Also represented by PHILIP EDWARD BESHARA.

ANUJ VOHRA, Crowell & Moring, LLP, Washington, DC, for defendant-appellee PAE-Parsons Global Logistics Services, LLC. Also represented by CHRISTIAN CURRAN, ZACHARY H. SCHROEDER.

─────────────────

Before PROST, SCHALL, and O'MALLEY, *Circuit Judges*.

PROST, *Circuit Judge*.

This bid-protest case arises from a peculiar procurement mechanism. Contracting officers often must discuss deficiencies and significant weaknesses in proposals with offerors before proposals are final. And so when an offeror proposes a price that is unreasonably high (so as to preclude an award), the government must discuss that unreasonableness with the offeror, potentially giving it a chance to revise its proposal to fix what may have went wrong. If the price is too high yet not unreasonable, the government

need not discuss it and the offeror need not get another try. The upshot is that an offeror whose initial proposal is unreasonably priced may fare better than one whose isn't.

Here, six firms vied for spots to perform logistics work for the Army across the globe. DynCorp lost. Its prices were higher than its competitors'; its proposed technical approach was worse. After balancing four proposal-evaluation factors, none of which DynCorp was best on, the Army went with other offerors.

Now DynCorp argues that the price it gave the Army was so high as to be unreasonable—and that the Army should have concluded as much and given it the opportunity to revise its proposed approach. DynCorp takes issue with the Army's price-reasonableness analysis, which it says skirted regulatory requirements and was irrational besides.

The Court of Federal Claims dismissed DynCorp's bid protest, finding no error in the Army's analysis. As we explain below, we agree. Accordingly, we affirm.

BACKGROUND

I.    THE SOLICITATION

This case involves the fifth iteration of the Army's Logistics Civil Augmentation Program—i.e., "LOGCAP V"—a procurement for logistics support services. Appellant, DynCorp International, LLC ("DynCorp"), was an unsuccessful offeror. Four of the appellees—Kellogg, Brown & Root Services, Inc. ("KBR"), Vectrus Systems Corporation ("Vectrus"), Fluor Intercontinental, Inc. ("Fluor"), and PAE-Parsons Global Logistics Services, LLC ("P2GLS")—were successful.

By way of background, in November 2017 the Army issued the LOGCAP V solicitation under Request for Proposal No. W52P1J-16-R-0001. *DynCorp Int'l LLC v. United States*, 148 Fed. Cl. 568, 572 (2020) ("*DynCorp I*").

Generally, LOGCAP is a procurement program for civilian logistics support services to the United States Army and related Department of Defense components throughout the world. In this iteration, the Army was to award four to six indefinite-delivery, indefinite-quantity ("IDIQ") contracts—each covering services among six geographic commands, plus Afghanistan.[1] Concurrent with the IDIQ awards, the Army was also to award seven sets of task orders—one set for each command and another for Afghanistan. *Id.* The services are broad: for instance, "supply operations, transportation services, engineering services, base camp services, and other logistics and sustainment support services," including "minor construction[,] food services[,] laundry[,] morale, welfare, and recreation services[,] billeting[, and] facility management." J.A. 1130447.

Under the solicitation, proposals were to be evaluated as a best-value tradeoff between four factors: (1) "technical/management," (2) "past performance," (3) "small business participation," and (4) "cost/price." *DynCorp I*, 148 Fed. Cl. at 572 (capitalization normalized); *see also* J.A. 1002511, 1002624. For the first three factors, each proposal was to be assigned a qualitative adjectival rating—"good," "acceptable," or the like. *See DynCorp I*, 148 Fed. Cl. at 572–73. The technical/management factor

---

[1]    That is, Northern Command ("NORTHCOM"), Southern Command ("SOUTHCOM"), European Command ("EUCOM"), African Command ("AFRICOM"), Central Command ("CENTCOM"), and Pacific Command ("PACOM"). *DynCorp I*, 148 Fed. Cl. at 572. The IDIQ contracts were divided into three so-called Operational Priority Groupings (EUCOM/PACOM, CENTCOM/NORTHCOM/AFRICOM/SOUTHCOM, and Afghanistan). *Id.* For short, the commands and Afghanistan are referred to here as "regions."

was the most important, and cost/price the least. *Id.* at 572; J.A. 1002624.

The technical/management factor evaluation criteria reflected the complexity and scope of the procurement, as well as the latitude given to individual offerors to choose their own technical approaches to fulfilling the Army's logistical needs. The Army was to evaluate, for example, "offerors' regional capabilities, management approach, key initiatives, and labor staffing models." *DynCorp I*, 148 Fed. Cl. at 573 (capitalization normalized); J.A. 1002626–27.

The solicitation also detailed how cost and price would be evaluated—both for realism and reasonableness. *See* J.A. 1002629–30. "Cost realism" asks if a cost estimate is too low; "price reasonableness" asks if a proposed price is too high. *Agile Def., Inc. v. United States*, 959 F.3d 1379, 1384 (Fed. Cir. 2020); *see also* FAR 15.404-1(d)(1).[2] As relevant here, the solicitation encompassed cost-plus-fixed-fee and firm-fixed-price portions. *See DynCorp I*, 148 Fed. Cl. at 573. To be considered, an offeror's total proposed cost (for the cost-plus-fixed-fee portion) and total proposed price (for the firm-fixed-priced portion) had to separately be found reasonable. *Id.* at 573, 579; J.A. 1002629–30. Unreasonableness for any region would render the offeror ineligible for award in that region, notwithstanding the strength of any other factor. J.A. 1002630.

This appeal specifically concerns price reasonableness for the firm-fixed-price portion. To that end, the solicitation provided that price reasonableness would be evaluated "using price analysis techniques" in accordance with FAR 15.404-1(b). *See* J.A. 1002629–30.

---

[2] The Federal Acquisition Regulation ("FAR") is codified in chapter 1 of title 48 of the Code of Federal Regulations. The section numbering is coextensive: for example, FAR 15.404 is codified at 48 C.F.R. § 15.404.

## II.  THE PROPOSALS

Six offerors submitted proposals.  *DynCorp I*, 148 Fed. Cl. at 573.  All six participated in multiple rounds of discussions and proposal revisions over the course of a year. *Id.*  During these discussions, the Army issued more than one hundred evaluation notices to DynCorp alone, of which thirty-nine related to cost or price in general.  *Id.*  All were satisfactorily resolved.

The contracting officer noted that DynCorp had provided the most expensive proposals in five regions but opted not to discuss the total-price issue with DynCorp.  *Id.* Namely, the contracting officer determined that there was "no basis to state that DynCorp's prices are too high," because its proposed hours and labor types were acceptable from a technical perspective, and there were no issues with its proposed direct and indirect rates.  J.A. 1124864.

On the technical/management factor, DynCorp's proposals all were rated merely "good" or "acceptable."  *DynCorp I*, 148 Fed. Cl. at 573.  Its labor staffing model was "feasible" and seemed "consistent, scalable, and adjustable," even if "generic and simplistic."  *Id.*  But DynCorp's proposal also "failed to mitigate risks with transparency, affordability, and predictability."  *Id.* at 573–74.

In February 2019, the Army issued a memorandum for each region comparing the offerors' total cost-plus-fixed-fee amounts to each other and total firm-fixed-prices to each other.  It determined (1) that there was adequate price competition in each region and (2) that the lowest-priced offer was reasonable.  *DynCorp I*, 148 Fed. Cl. at 581.  And in April 2019, it awarded four IDIQ contracts, along with related task orders.[3]  *Id.* at 573.  DynCorp won none of them.

---

[3]    KBR received EUCOM, NORTHCOM, and Afghanistan; Vectrus received PACOM and CENTCOM; Fluor

### III. THE AFTERMATH

#### A.  *The First Round at the Court of Federal Claims*

In August 2019, DynCorp brought a bid protest in the Court of Federal Claims challenging the awards under the Administrative Procedure Act ("APA").  *See generally Dyn-Corp I*, 148 Fed. Cl. 568.  That action followed the denial of an earlier bid protest that it had filed with the Government Accountability Office.  *Id.* at 574.

DynCorp's protest made a bevy of allegations.  *See id.* at 575.  After briefing, the parties cross-moved for judgment on the administrative record.  The Court of Federal Claims later rejected most of DynCorp's challenges—all but one.[4]  DynCorp had accused the Army of erring in its price-reasonableness analysis.  *Id.* at 579.  At first, the Army had evaluated price reasonableness for only some offers—the lowest-priced and winning ones.  *See id.* at 581.  In its view, that was all it needed to do to ensure that the contract could be awarded at a fair and reasonable price.  But the solicitation required the Army to evaluate price reasonableness for *all* offers.  *Id.* at 579, 581.  This mattered: an unreasonably high price would be a "deficiency" or "significant weakness" that the Army would be required to discuss with the offeror.  *Id.* at 582 (citing *WorldTravelService v. United States*, 49 Fed. Cl. 431, 439 (2001)); *see* FAR 15.306(d)(3).

Reasoning that this failure seriously hampered Dyn-Corp's chances to win and made it impossible to tell whether the Army had otherwise gone astray in its price-reasonableness analysis, the court found both error and prejudice.  *DynCorp I*, 148 Fed. Cl. at 582, 585.  It explained

---

received AFRICOM; and P2GLS received SOUTHCOM. *DynCorp I*, 148 Fed. Cl. at 573.

    [4]    The other challenges are not at issue in this appeal.

as much to the parties from the bench at argument. *See* J.A. 1862–65.

### B. *The Army's Corrective Action on Remand*

Before receiving a judgment and written opinion on the above problems, the Army changed course. In advance of the Court of Federal Claims' written opinion discussing its findings above, it became clear to the Army that its failure to evaluate *all* the proposals for reasonableness was problematic. *See DynCorp I*, 148 Fed. Cl. at 585. So, the Army told the trial court in December 2019 that it intended to take corrective action on that front. *Id.* The court stayed and remanded the case to allow the Army to do so. *Id.* at 586.

On remand, the Army sought additional data from the offerors to justify the reasonableness of their firm-fixed prices. *See* J.A. 670–1689, 1753885, 1755618, 1755715, 1755844, 1755951, 1772629. It reviewed this information along with that in the original proposals.

Each proposal differed in its technical approach. Accordingly, the Army looked at each element of each approach, evaluated whether it was technically reasonable, analyzed whether the price was reasonable for that element, and then determined whether the price was reasonable overall. *See* J.A. 670–1689. In all, the Army generated seventy-eight memoranda spanning over a thousand pages and detailing its price-reasonableness analysis for each offer in each region. *See* J.A. 669–1689. All six offerors, it concluded, had proposed reasonable (if different) technical approaches with reasonable (if different) prices. Accordingly, the Army declined to reopen discussions, maintained its prior award choices, and in February 2020

notified the trial court of the results of its corrective action. *DynCorp I*, 148 Fed. Cl. at 586; J.A. 665–69.[5]

C.   *The Second Round at the Court of Federal Claims*

Back at the Court of Federal Claims, DynCorp remained dissatisfied, continuing to insist that its offer must have been unreasonable and that the Army's price-reasonableness analysis was erroneous. To that end, it argued that the Army had violated the FAR in its choice of price-analysis techniques and had irrationally concluded that all the prices were reasonable despite their spanning a wide range. *See DynCorp Int'l LLC v. United States*, No. 19-1133, 2020 U.S. Claims LEXIS 959, at *5–6 (Fed. Cl. May 21, 2020) ("*DynCorp II*").

The Court of Federal Claims disagreed, concluding that the Army had complied with the FAR and the solicitation, which did not restrict the Army's discretion in the way DynCorp said it did. *Id.* at *8. The court observed that DynCorp simply "disagree[d] with the manner in which the [Army] conducted its price reasonableness evaluations." *Id.* at *5–6. With the corrective action considered, the court reasoned, DynCorp had identified nothing to justify

---

[5]   The corrective action here was relevant to other bid protests concerning the LOGCAP V solicitation. *See, e.g.*, *Fluor Intercontinental, Inc. v. United States*, 147 Fed. Cl. 309, 333–36 (2020); *AECOM Mgmt. Servs., Inc. v. United States*, 147 Fed. Cl. 285, 294 (2020); *PAE-Parsons Glob. Logistics Servs., LLC v. United States*, 147 Fed. Cl. 294, 308–09 (2020). And in those cases, the trial court rejected in detail various other challenges to the Army's price-reasonableness analysis. *See, e.g.*, *Fluor*, 147 Fed. Cl. at 338 (concluding that corrective action "adequately evaluated price reasonableness in accordance with both the [s]olicitation and the FAR"); *AECOM*, 147 Fed. Cl. at 293–94.

overturning the award.  Accordingly, it dismissed the case. *Id.* at \*11–12.

DynCorp now appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I

A bid protest has two steps.  First, the trial court determines whether the government acted irrationally or contrary to law in evaluating the proposals and awarding the contract. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  Second, if the government erred, the trial court then determines whether that error prejudiced the protester. *Id.*

Here the Court of Federal Claims discerned no error and therefore granted judgment on the administrative record.  On appeal of that judgment, we review legal conclusions de novo and underlying determinations of fact for clear error. *Id.* at 1351, 1354.

The Court of Federal Claims had jurisdiction over Dyn-Corp's bid protest of the awards under 28 U.S.C. § 1491. The Court of Federal Claims reviews the agency's decision under the judicial-review standards of the APA.  28 U.S.C. § 1491(b)(4).  An APA challenge requires showing that the agency action in question is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).  Accordingly, "[a] bid award may be set aside" if (1) "the procurement official's decision lacked a rational basis" or (2) "the procurement procedure involved a violation of regulation or procedure." *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (quoting *Impresa*, 238 F.3d at 1332).  The APA also requires that "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  So, "[t]o prevail in a bid

protest, a protestor must show a significant, prejudicial error in the procurement process." *WellPoint*, 953 F.3d at 1377 (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)); *see also Bannum*, 404 F.3d at 1351.[6]

What DynCorp challenges here is the way in which the Army concluded that its proposed prices were reasonable. Unreasonably high-priced proposals were ineligible for award under the solicitation. DynCorp's overall argument is that if the Army had labeled its proposed price unreasonable, then that would have been a "deficiency" or "significant weakness" of its proposal. *See DynCorp I*, 148 Fed. Cl. at 578. A relevant provision of the FAR requires contracting officers to discuss "deficiencies" and "significant weaknesses" with offerors. *See* FAR 15.306(d)(3) ("At a minimum, the contracting officer must . . . indicate to, or discuss with, each offeror still being considered for award, deficiencies[ and] significant weaknesses . . . to which the offeror has not yet had an opportunity to respond. . . . However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment."); *DynCorp I*, 148 Fed. Cl. at 577. The

---

[6] The APA does not provide an exception to the prejudicial-error rule for arbitrary and capricious action. *See Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907, 911–12 (Fed. Cir. 2013); *see also Carstens v. Nuclear Regul. Comm'n*, 742 F.2d 1546, 1558 (D.C. Cir. 1984) (noting that the "onus is squarely upon" a party alleging error under the APA "to establish prejudice"); *Jicarilla Apache Nation v. U.S. Dep't of the Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) ("Courts reviewing agency action under section 706(2)(A)'s 'arbitrary and capricious' standard must take due account of the rule of prejudicial error." (cleaned up)).

discussion prompted by that price-unreasonableness determination, DynCorp contends, would have given it the opportunity to revise its technical approach to reach a lower price (perhaps incidentally bolstering its performance on the technical factor too), improving its competitive odds.

DynCorp argues that the Army went astray in two ways. First, we consider DynCorp's argument that the Army violated part 15 of the FAR in its price-reasonableness analysis by bypassing two "preferred" price-analysis techniques without meeting certain conditions. DynCorp argues that if the Army *had* used the "preferred" price-analysis techniques, it would likely have concluded that DynCorp's proposed price was unreasonable. Second, we address whether the Army's price-reasonableness conclusion was arbitrary and capricious in view of the price disparity among offers. DynCorp contends that the Army failed to account for that price disparity—and that if it had, the unreasonableness of its price would have been apparent. Overall, DynCorp insists that but for either error, it would have had a substantial chance of an award: the Army would have had to tell it that its prices were unreasonably high, and DynCorp could have revised its approach to reach a lower price.

## II

DynCorp's first argument is that that the Army violated FAR 15.404-1 by using certain price-analysis techniques without making certain predicate determinations.[7]

---

[7]    An IDIQ contract such as this is not always subject to FAR 15.404-1. *See DynCorp I,* 148 Fed. Cl. at 579 n.4. The reason that FAR 15.404-1 applies here is that the Army itself elected to employ it as a procurement-evaluation method. *Id.* That is, the solicitation provided that the government would "evaluate price reasonableness for the

In its view, had the contracting officer instead used certain other techniques (i.e., ones that DynCorp argues are required by the FAR), its prices would have likely been deemed unreasonable. As the argument goes, that unreasonableness finding would prompt discussions, the opportunity to improve its proposal, and a better chance at an award.

Contracting officers must procure services "at fair and reasonable prices." FAR 15.402(a). To that end, FAR 15.404-1 identifies various price-analysis techniques and provides that the "objective of proposal analysis is to ensure that the final agreed-to price is fair and reasonable." FAR 15.404-1(a). And "[t]he complexity and circumstances of each acquisition should determine the level of detail of the analysis required." FAR 15.404-1(a)(1).

Given the differences among procurements and the judgment involved, the government "may use various price analysis techniques and procedures to ensure a fair and reasonable price." *See* FAR 15.404-1(b)(2). The FAR explains that "examples" of these techniques "include, but are not limited to," a seven-item list. *See* FAR 15.404-1(b)(2)(i)–(vii). The first two on that list are comparison of proposed prices to each other and to historical prices. FAR 15.404-1(b)(i), (ii). The list continues: "parametric estimating methods/application of rough yardsticks," "[c]omparison with competitive published price lists, published market prices of commodities, [or] similar indexes," "[c]omparison . . . with independent [g]overnment cost estimates," and "[c]omparison . . . with prices obtained through market research." FAR 15.404(b)(iii)–(vi). The last-listed technique is "[a]nalysis of data other than certified cost or

fixed priced effort [in accordance with] FAR 15.404-1(b)." *Id.* at 579 (alteration in original); *see also* J.A. 1002629.

pricing data . . . provided by the offeror."    FAR 15.404-1(b)(vii).

Among these, the FAR suggests a starting point:

> The first two techniques at 15.404-1(b)(2) are the preferred techniques.  However, if the contracting officer determines that information on competitive proposed prices or previous contract prices is not available or is insufficient to determine that the price is fair and reasonable, the contracting officer may use any of the remaining techniques as appropriate to the circumstances applicable to the acquisition.

FAR 15.404-1(b)(3).

The Army did not use the first two techniques and did not make a documented determination that such information was unavailable or insufficient.  The question in this case is whether it was required to.

DynCorp insists that any but the "preferred" techniques are strictly forbidden unless there is first a "determination" that competitive or historical price information is unavailable or insufficient.  Appellees, the successful awardees, argue that FAR 15.404-1(b)(3) provides guidance, not a rule, and that a contracting officer has discretion to determine which price-analysis technique to use as appropriate.  The government agrees.  So did the Court of Federal Claims.  *See DynCorp II*, 2020 U.S. Claims LEXIS 959, at *8–10; *see also, e.g.*, *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 83 Fed. Cl. 666, 696 (2008), *rev'd on other grounds*, 586 F.3d 1372 (Fed. Cir. 2009); *Survival Sys. USA, Inc. v. United States*, 102 Fed. Cl. 255, 269 (2011).

## A

In our view, FAR 15.404-1(b)(3) does not conditionally prohibit a contracting officer from using any particular

price-analysis technique.  Rather, FAR 15.404-1 leaves the choice of price-analysis technique to a contracting officer's reasonable judgment in the context of an individual procurement.

1

As an initial matter, we reiterate that "contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa*, 238 F.3d at 1332 (cleaned up).  "Contracting officers are given broad discretion in their evaluation of bids," and when a decision within the scope of that discretion "is reasonable[,] a court may not substitute its judgment for that of the agency."  *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003).  Naturally, an agency has no discretion to disregard binding regulations.  *E.g.*, 5 U.S.C. § 706(2).  But proposal price-reasonableness analysis otherwise sits comfortably amid this discretionary background.

In *Agile Defense*, this court considered discretion in cost-realism analysis—a facet of proposal evaluation similar to price-reasonableness and also based in FAR 15.404-1.  And there we endorsed the Court of Federal Claims' view that "contracting agencies enjoy wide latitude in conducting the cost realism analysis."  *Agile Def.*, 959 F.3d at 1385–86 (cautioning against "unduly circumscrib[ing] a contracting officer's discretion and hamstring[ing] a contracting agency's efforts").

These principles extend to price reasonableness too.  Indeed, the Court of Federal Claims has observed as much.  *See infra* section II.A.4.  After all, the point of a price-reasonableness analysis is to protect the public from paying a price that is too high for what is being procured.  *See Agile Def.*, 959 F.3d at 1384.  And what exactly is "reasonable" is a judgment based on the specifics of the government's needs.

2

Against this backdrop, we consider the interpretive question before us. We agree with the Court of Federal Claims: FAR 15.404-1(b)(2) and (3) are permissive, not prohibitive.

The FAR states that the government "*may* use various price analysis techniques and procedures to ensure a fair and reasonable price." FAR 15.404-1(b)(2) (emphasis added); *see* FAR 2.101 ("*May* denotes the permissive."). It explains that the listed techniques are nonlimiting "examples." FAR 15.404-1(b)(2). Further, the provision states that the first two techniques are simply "preferred." FAR 15.404-1(b)(3). "Preferred" expresses here a suggestion, not a strict hierarchy. In this context, "preferred" does not mean "required" but instead "encouraged." *See also, e.g.*, *Webster's Third New International Dictionary* (1961) (defining "prefer" as "like better : value more highly"). It is more "should" than "shall." *See AT&T v. United States*, 307 F.3d 1374, 1379–80 (Fed. Cir. 2002) (interpreting regulations as a "caution," "not a prohibition," where text provided that a preferred type of contract conditionally "should be considered"); *Qwest Corp. v. FCC*, 258 F.3d 1191, 1200 (10th Cir. 2001) (explaining that "should" conveys "recommended course of action" but does not imply obligation of "shall").

DynCorp points to what it views as limiting prohibitory language: namely, that "if the contracting officer determines that information on competitive proposed prices or previous contract prices is not available or is insufficient to determine that the price is fair and reasonable, the contracting officer may use any of the remaining techniques as appropriate." FAR 15.404-1(b)(3). Here we do not read "if" to mean "*only* if." And at any rate (assuming that the information is "available"), the "if" clause at most asks for a

determination that the preferred technique is "insufficient to determine that the price is fair and reasonable."[8]

The nature of this supposed "determination" confirms our view. "Insufficient" in this context is a judgment call. The yardstick by which sufficiency is measured here is not some specific rule, formula, calculation, or detailed fact-finding. Rather, it is the reasonable-discretion-informed appropriateness of the technique under the circumstances. In exercising her fact-specific judgment to select a price-analysis technique, a contracting officer will reasonably view some to be suitable and some not—in a manner that may be implicit. FAR 15.404-1(b)(3) imposes no further requirement than that. The "if" provision, accordingly, operates not to cabin a contracting officer's discretion but to give the preference whatever weight is due under the circumstances of a particular procurement. Of course, a contracting officer's price analysis must be rational: the choice is committed to discretion, not whim. *See* 5 U.S.C. § 706. But the plain language of the provision itself is not prohibitive and does not conditionally restrict a contracting officer's discretion.

3

We turn next to the FAR as a whole. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 167 (2012) ("The

---

[8]    As the government observes, the text refers to the technique being "insufficient to determine *that* the price *is* fair and reasonable," not "*whether* the price is fair and reasonable" or "that the price is unreasonable." *See* United States Br. 35–38. The government's argument is that even if FAR 15.404-1(b)(3) were limiting, it would only be limiting if the contracting officer could declare an offeror's price to be *reasonable* using the preferred techniques, preventing the government in that instance from using the other techniques to instead find the price *unreasonable*.

text must be construed as a whole. . . . Context is a primary determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole."). FAR 15.404-1(b)(3) is part of a larger set of related rules—the Federal Acquisition Regulation. And the broader text of the FAR confirms that this language isn't prohibitive.

To this end, it's useful to look at the language that the FAR uses where it *does* prohibit or condition certain actions. For instance: "no person may." *See, e.g.*, FAR 2.101 ("[T]he words 'no person may . . .' mean that no person is required, authorized, or permitted to do the act described."). Or "shall not." *See, e.g.*, FAR 6.302-1(b) ("This authority shall be used, if appropriate, in preference to the authority in 6.302-7; it shall not be used when any of the other circumstances is applicable.").

It's also revealing to look at the language the FAR uses when *requiring* action. For one: "shall." *See, e.g.*, FAR 2.101 ("*Shall* denotes the imperative."); FAR 15.404-1(a)(2) ("Price analysis *shall* be used when certified cost or pricing data are not required . . . ." (emphasis added)); FAR 15.404-4(b)(1)(i) ("[The government] [*s*]*hall* use a structured approach for determining the profit or fee objective in those acquisitions that require cost analysis . . . ." (emphasis added)). Or "must." *See, e.g.*, FAR 2.101 ("*Must* (see 'shall')."). Similarly, the FAR at various points within a single provision uses both "shall" (a command) and "should" or "may" (a preference or permission). *See, e.g.*, FAR 15.404-1(a); *cf. Huston v. United States*, 956 F.2d 259, 262 (Fed. Cir. 1992) ("When, within the same statute, Congress uses both 'shall' and 'may,' it is differentiating between mandatory and discretionary tasks.").

What's more, FAR 15.404-1(b) lacks a documentation requirement. Generally, "[c]ontracting officers are not obligated by the APA to provide written explanations for their actions." *Impresa*, 238 F.3d at 1337. And elsewhere the FAR details where documentation of a determination *is*

required.  *See, e.g.*, FAR 15.304(c)(3)(iii) ("Past performance need not be evaluated if the contracting officer documents the reason past performance is not an appropriate evaluation factor for the acquisition."); FAR 15.208(e) ("The contracting officer must document the contract file when oral withdrawals are made."); FAR 15.407-1(d) ("The contracting officer shall prepare a memorandum documenting both the determination and any corrective action taken as a result."); *see also* Vectrus Br. 32–33 & n.8 (collecting examples).  Such a requirement is absent here.

Indeed, elsewhere the FAR uses far stronger language for the exact formulation that DynCorp argues here: a default rule prohibiting departure absent satisfying certain conditions.  For example, the FAR instructs in source selections that past performance "shall be evaluated" as a factor, but "need not be evaluated if the contracting officer documents the reason past performance is not an appropriate evaluation factor for the acquisition." FAR 15.304(c)(3)(i), (iii).

Accordingly, the FAR drafters' use of "preferred" and "may" here—without an express documentation requirement and against a discretionary proposal-evaluation backdrop—is consistent with the choice of technique being committed to a contracting officer's discretion.

4

Finally, we observe that other tribunals to encounter FAR 15.404-1 have viewed it the same way we do.  Indeed, DynCorp has not identified any decision holding that FAR 15.404-1(b)(3) restricts agency discretion in the way it suggests.  The Court of Federal Claims in *Survival Systems, USA v. United States*, in contrast, explained that FAR 15.404-1 simply "provides guidance" in a way that nonetheless "permits the agency broad discretion." 102 Fed. Cl. at 267. Specifically, FAR 15.404-1(b)(2) "permits the government discretion in its choice of method to determine price reasonableness."  *Id.* at 269.  And in

*Overstreet Electric Co. v. United States*, the court noted that the regulation "indicates that the [g]overnment has discretion in choosing which of several acceptable price analysis methods to employ." 47 Fed. Cl. 728, 733 n.8 (2000). So too in *Alabama Aircraft Industries*. 83 Fed. Cl. at 696 ("[The] FAR lacks an explicit directive to contracting agencies mandating the use of any particular analytical tool in evaluating the reasonableness and realism of an offeror's price."). And the Court of Federal Claims in this case agreed too. *DynCorp II*, 2020 U.S. Claims LEXIS 959, at *8–10. Though these views are not binding, they are consistent with ours.

B

In the alternative, even if the language of FAR 15.404-1(b)(3) were read to require a specific determination that the two "preferred" techniques were inadequate, in our view the contracting officer made that determination. Although it was not documented, it is clear from the record and was within the scope of the contracting officer's discretion. Accordingly, the record is "sufficient to permit meaningful judicial review," *see Palantir USG, Inc. v. United States*, 904 F.3d 980, 994 (Fed. Cir. 2018), and "the agency's decisional path is reasonably discernible," *see Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998).

1

FAR 15.404-1(b)(3) is not particularly demanding. It explains that "if the contracting officer determines that information on competitive proposed prices or previous contract prices is not available or is *insufficient to determine that the price is fair and reasonable*, the contracting officer may use any of the remaining techniques as appropriate to the circumstances applicable to the acquisition." FAR 15.404-1(b)(3) (emphasis added).

As an initial matter, DynCorp argues that the supposedly required "determination" concerns whether the underlying information is "insufficient" *to compare prices*. *See* Appellant's Br. 35–36. And it contends that the information cannot be "insufficient" to compare prices here, as the record is full of competitive pricing information. *See* Appellant's Br. 36. The Army used this information preprotest to determine that the lowest-priced offers were reasonable. Accordingly, the argument goes, the Army *could have* compared proposals and therefore *could not have* determined the underlying information to be insufficient to do so. This misses the point. "Insufficient" in this context means insufficient *for determining price reasonableness* overall. *See* FAR 15.404-1(b)(3). And that insufficiency is a value-laden consideration: for some procurements, an overall price comparison between proposals or a historical comparison might make sense; for some, it might not. Therefore, the question becomes whether it is discernible from the record that the Army itself viewed competitive or historical price comparisons to be insufficient to assess reasonableness.

2

DynCorp argues that the record does not reflect the Army having determined that the two preferred price-analysis techniques were insufficient. We disagree.

In February 2019, while proposals were being evaluated the first time around, the Army issued a memorandum for each region separately comparing the cost-plus-fixed-fee portions to each other and the firm-fixed-price portions to each other. J.A. 1069866–94. The Army found adequate price competition in each region and that the lowest-priced offers were reasonable. J.A. 1069866–94. But it noted at the time that it might need further information to evaluate the other, higher-priced offers. *See, e.g.*, J.A. 1069877; *see also* J.A. 1755951 (noting that it "reserved the right to request this information if needed to

assess reasonableness of the proposed prices"). And indeed, when later analyzing *all* prices in December 2019, the Army did request further cost and pricing data from offerors and chose to analyze "data other than certified cost and pricing data"—i.e., data falling under FAR 15.404-1(b)(2)(vii), a non-preferred technique. *See* J.A. 1753885, 1755618, 1755715, 1755844, 1755951, 1772629. In doing so, it wrote that this other information was "needed to assess reasonableness." J.A. 1753885, 1755618, 1755715, 1755844, 1755951, 1772629.

The decisional basis is clear. This was a complicated procurement in which each offeror proposed a different technical approach. Upon receiving that information, the agency documented its analysis at great length, specifically invoking FAR 15.404-1(b)(2)(vii). Accordingly, it is clear from the record that the contracting officer, in its discretion, viewed the "preferred" techniques to be insufficient to assess reasonableness.

## III

DynCorp's second argument is that the Army's procurement decisions here were arbitrary and capricious for purportedly failing to address what DynCorp views as a fundamental problem: "dramatic disparities that separate[d] the prices of the offerors." Appellant's Br. 36–37. DynCorp argues that the Army failed to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Appellant's Br. 37 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

DynCorp accuses the Army of a "critical logical gap"—namely, a supposed failure to "square its conclusion that all offerors' prices were reasonable with the known price disparities." Reply Br. 13. DynCorp's view is that it is an "obvious problem" that all the proposed prices could be reasonable despite wide variation among them. Appellant's

Br. 29. And it insists that the Army "cannot coherently explain" how that can be. *Id.* at 4. As for the consequences of this alleged error, DynCorp insists that the consequence of accounting for that price disparity would likely have been a finding that DynCorp's prices were unreasonable. From that finding, DynCorp says, would stem discussions and an opportunity to revise its proposal.

Appellees, for their part, suggest that "competing offerors' prices in a best value procurement always vary"—a "banal fact" that means that, inevitably, "some proposals are more expensive than others." *E.g.*, Fluor Br. 37. There is simply no "fundamental problem" to address, they say. And they suggest that the disparities in price here all follow from differences in proposals' technical approaches (differences all reasonable, all unchallenged, and all considered in the Army's analysis).

Review in bid protests under the arbitrary-and-capricious standard is "highly deferential." *Glenn Def.*, 720 F.3d at 907 (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)). Under it, we must "sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). And an "explicit explanation is not necessary . . . where the agency's decisional path is reasonably discernible." *Wheatland Tube*, 161 F.3d at 1369–70.

The Army did not ignore the price differences. Indeed, it acknowledged that DynCorp had "the highest total proposed price when compared [with] the total proposed prices of the other offerors." *See* J.A. 1124863–67 (memorandum discussing DynCorp's total proposed prices). But it accounted for the differences—for instance, by noting differential labor hours and rates among offerors. *Id.*; *see also, e.g.*, KBR Br. 38–39 (noting that the Army "reviewed the unique aspects of each offeror's firm-fixed-price [portions]

and assessed related differences in pricing" (discussing J.A. 796–850, 975–1028, 1130–80, 1304–53, 1473–530, 1650–86)).  In some areas DynCorp proposed using more hours and higher labor rates—including, for example, a higher proportion of more-expensive expatriate hours.  *See* J.A. 1124863–64.  DynCorp's technical choices were Dyn-Corp's prerogative.  And DynCorp points to nothing specific in its pricing that was unreasonable given those choices.

Overall, the Army determined that each offeror's price was reasonable for its chosen technical approach.  *E.g.*, J.A. 975–83 (examining reasonableness of pricing for AFRICOM task order firm-fixed-price portion for DynCorp, taking into account direct labor, various direct costs, direct labor overhead, global-solutions overhead, administrative costs, and proposed profit, etc.); *id.* at 983 (concluding that the "proposed price . . . for the [firm-fixed-price] portion of the AFRICOM effort is reasonable for DynCorp's proposed approach").  It also determined that each offeror's technical approach was appropriate, and DynCorp does not chal-lenge *those* findings.  At bottom, DynCorp's challenge amounts to an argument that the technical approach it chose was unreasonable, but it fails to identify any error in the Army's view that its proposed technical approach was acceptable.  The different (but reasonable) prices resulted from different (but reasonable) technical approaches.  There was therefore no *problematic* aspect of the price dis-parity to address, and therefore no "important aspect of the problem" left unconsidered.  *Cf. Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  To the extent that DynCorp challenges the contracting officer's choice of particular price-analysis techniques as arbitrary or capricious, we are not convinced.

DynCorp also complains that the Army irrationally did not explain *why* it didn't employ a simple proposal-to-pro-posal price comparison.  But we don't see why it must (or even should) have.  As we explained above, the regulations didn't require that.  And the context is clear:  This was a sweeping procurement to establish an involved logistics

support program in various operational theaters around the globe, with complex technical requirements and substantial latitude afforded to the offerors to figure out how they would accomplish them. Naturally, prices would vary. And the Army had discretion to view a crude price-tag comparison as insufficient and instead to pick from among other price-analysis techniques as appropriate to the specifics. *See, e.g.*, J.A. 983 (picking FAR 15.404-1(b)(2)(vii)). In the end, the Army explained its analysis in detail in a way that permits meaningful review on the merits. DynCorp alleges no errors in that price analysis other than its favored technique not having been used. And that doesn't clear the high hurdle to declaring the Army's approach untethered to rationality.

Finally, DynCorp insists that the Army's price-reasonableness analysis on remand was merely an impermissible post hoc rationalization. It's true that an agency cannot rely on a new rationale for an old decision. *See, e.g., Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 419 (1971). But that isn't what the Army did. Rather, on remand it made new determinations about price reasonableness—ones that the Court of Federal Claims had concluded it hadn't made before. It declined to revisit the overall award, but in the context of this remand, the only basis for doing so would have been the unreasonableness of one of the offerors' prices.

Accordingly, based on the record and the agency's discretion in this area, we are not persuaded that the Army's procurement was arbitrary or capricious.

## CONCLUSION

We have considered DynCorp's remaining arguments but find them unpersuasive. DynCorp's proposed price was high. But it was not unreasonably high for the technical approach it proposed. In so finding, the government did

not violate FAR part 15 and did not act irrationally.  We
therefore affirm.

**AFFIRMED**