NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**ANDERS CONSTRUCTION, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————————

2024-2247

———————————

Appeal from the United States Court of Federal Claims in No. 1:23-cv-00759-LAS, Senior Judge Loren A. Smith.

———————————

Decided:  May 12, 2026

———————————

JONATHAN S. FORESTER, Riess LeMieux, LLC, New Orleans, LA, argued for plaintiff-appellee.  Also represented by CHRISTOPHER K. LEMIEUX.

BRENDAN DAVID JORDAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE, YAAKOV ROTH.

———————————

Before DYK, CHEN, and STARK, *Circuit Judges.*

DYK, *Circuit Judge.*

The government appeals a judgment of the Court of Federal Claims ("Claims Court") in a pre-award bid protest filed by Anders Construction, Inc. ("Anders"). The Claims Court enjoined the United States Army Corps of Engineers ("Army Corps") from awarding a diving-services contract to anyone but Anders because the Claims Court found that the government arbitrarily determined that Anders's proposal was technically unacceptable. We *reverse* the judgment of the Claims Court, *vacate* the injunction, and *remand* for further proceedings consistent with this opinion.

## BACKGROUND

The Army Corps issued a solicitation on July 30, 2021, for diving services related to maintaining waterway infrastructure in Louisiana. The solicitation stated that "[f]or a proposal to result in an awardable contract, the proposal must meet all Performance Work Statement (PWS) requirements, must include all required information requested in Section L [Instructions, Conditions, and Notice to Offerors or Respondents], and must conform to all required terms and conditions." App'x 4786.[1] The solicitation further stated that "[s]ubjective judgment is implicit throughout" the evaluation of the "acceptability standards for non-cost factors." *Id.* Anders and two other companies submitted bids. The Army Corps initially determined that Anders had submitted a technically acceptable bid and that the two other bidders had not. On January 11, 2022, one of the other bidders, Specialty Diving of Louisiana, Inc. ("Specialty"), asked the Army Corps to reconsider

---

[1]     Citations to "App'x" refer to the Appendix filed by the government in this case. Dkt. No. 21.

Specialty's proposal, arguing that it met the technical acceptability criteria.

In response, the Army Corps re-evaluated both Anders's and Specialty's proposals. On its second look, the Army Corps again concluded that Specialty's proposal was not technically acceptable. The Army Corps found that, contrary to its earlier decision, Anders's proposal was also not technically acceptable because, among other things, Anders's proposal failed to include three required technical elements: a sample completion report from a previous contract documenting the results and findings of a dive, a lost-diver plan, and an adequate outline of administrative and record-keeping procedures, the latter two elements being required components of a "Safe Practices Manual." Additionally, the Army Corps notified Anders that it was concerned that Anders's pricing proposal exceeded independent government estimates. App'x 6784.

On March 3, 2022, Anders filed a protest with the Army Corps, arguing that the agency should have deemed its proposal technically acceptable. On March 21, 2022, the Army Corps contracting officer notified Anders that the agency determined it would take corrective action by reissuing the solicitation to clarify and remove several solicitation requirements, including some of the technical elements contested by Anders, and allowing all offerors to submit revised proposals. On April 19, 2022, the Army Corps issued Amendment 7, replacing the original solicitation with a revised version that did not require an offeror to submit a Safe Practices Manual until after it had been selected as an awardee.

On May 23, 2023, Anders filed a pre-award bid-protest complaint at the Claims Court, challenging the Army Corps's determination that Anders's original bid was technically unacceptable, seeking a declaration that Amendment 7 was an improper corrective action, and seeking "an order directing the [Army Corps] to award the contract

pursuant to the Solicitation prior to the issuance of Amendment #7." App'x 59. Anders also alleged that the Army Corps violated two provisions of the Federal Acquisition Regulations ("FAR") by failing to provide the results of an independent review and by inviting proposals to the Amendment 7 revised solicitation from previously disqualified bidders.

Anders filed a motion for judgment on the administrative record, and the government filed a cross-motion. On May 22, 2024, the Claims Court granted Anders's motion in relevant part and denied the government's cross-motion, finding that Anders had included a compliant completion report, lost-diver plan, and record-keeping outline, and that the Army Corps's rejection of Anders's proposal for technical insufficiency was arbitrary.[2] On June 17, 2024, the Claims Court permanently enjoined the Army Corps "from proceeding with performance of the contract with any entity other than plaintiff" and from "conducting the corrective actions described in Solicitation Amendment 7." App'x 16.

The government timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

---

[2]    The Claims Court found that the Army Corps's determinations on five solicitation requirements were arbitrary. In addition to the three technical issues involved in this appeal, the Claims Court also determined that the Army Corps arbitrarily rejected Anders's proposal on the grounds that Anders failed to submit a "sample repetitive dive worksheet" and that Anders did not sufficiently document the qualifications of a diving supervisor. App'x 8–12. The government does not appeal the Claims Court's conclusions as to the dive worksheets or the diving supervisor.

DISCUSSION

I

We first consider whether the Claims Court erred in deciding that it was arbitrary for the Army Corps to conclude that Anders's proposal was not technically acceptable and that Anders should have been awarded the contract.

The solicitation stated that the Army Corps would "award [a contract] to the lowest priced offer" that it "deemed to be technically acceptable." App'x 4787. We may set aside the agency's determination only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1374 (Fed. Cir. 2024) (quoting 5 U.S.C. § 706(2)(A)). However, "[e]ffective contracting demands broad discretion." *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958–59 (Fed. Cir. 1993); *accord DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1315 (Fed. Cir. 2021). The solicitation expressly indicated that technical acceptability implicitly requires subjective judgment. A reviewing court may not "second guess" the "discretionary determinations of procurement officials" with respect to technical evaluations. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). A disappointed bidder bears a "heavy burden" of showing that a procuring agency's decision on technical features lacked a rational basis. *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (citation omitted). We review the Claims Court's judgment on the administrative record without deference and thus apply the same standard of review as the Claims Court. *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

We conclude that the Claims Court erred in concluding the Army Corps's technical noncompliance determinations with respect to the lost-diver plan and the administrative and record-keeping outline were arbitrary, so we need not

address the Claims Court's determination regarding the sample completion report.

The solicitation required each offeror to submit a copy of its "Safe Practices Manual . . . includ[ing] the requirements stated in Section 30.A.15, items a-k" of the Army Corp's Safety and Health Requirements Manual.[3] App'x 4784. Item d.5 of this section required "specific procedures for: . . . Lost diver plan (SCUBA Operations only)." Addendum 1 (emphasis in original).[4] Anders submitted a "Severance of Complete Umbilical" plan (a plan listing steps to follow if a diver's umbilical tether becomes severed) that it contends is a lost-diver plan, App'x 6859, though it concedes that "Anders Construction [did] not have a page individually titled 'Lost SCUBA Diver Plan,'" App'x 6859.

The Army Corps Source Selection Evaluation Board ("SSEB") concluded there was no lost-diver plan in Anders's proposal, noting that he "[did]n't see [it] in the proposal." App'x 2150. The contracting officer also determined that Anders had failed to submit a lost-diver plan. App'x 2154 ("Item 'd.5' . . . [was] not identifiable in Anders'[s] Volume 1, Technical Evaluation Documentation, Management Plan proposal.").

On review, the Claims Court determined that Anders's proposal complied with the lost-diver-plan requirement and that Anders was not required to use any particular label where none was required by the solicitation. App'x 10.

---

[3] Amendment 7 removes the Safe Practices Manual as a proposal requirement. But neither party suggests that Amendment 7 moots this bid protest concerning Anders's proposal submitted prior to the issuance of Amendment 7.

[4] Citations to the "Addendum" refer to the excerpt of the Army Corps EM 385-1-1 Safety and Health Requirements Manual (Nov. 30, 2014) filed as an addendum to the Appellant's Opening Brief. Dkt. No. 12 at 66–67.

Reasoning that "[m]ere semantic preferences are not reason enough to kick out a proposal when, as here, those preferences were never communicated to prospective offerors," the Claims Court concluded that the Army Corps's rejection of Anders's proposal on this ground was arbitrary. *Id.*

The Claims Court erred in its conclusion. "[T]he burden is on the offeror to submit a well-written proposal with adequately detailed information that allows for a meaningful review by the procuring agency." *See Mission1st Grp., Inc. v. United States*, 144 Fed. Cl. 200, 213 (2019) (internal quotation marks omitted) (collecting cases). Anders's proposal did not make any reference to a lost-diver plan. Indeed, it did not even use the key word "lost" in the severed-umbilical plan, which appeared only on page 465 of a proposal having more than 1,000 pages, of which over 800 pages were identified as the Safe Practices Manual. Under these circumstances, the Army Corps cannot be faulted for not treating the severed-umbilical plan as a lost-diver plan. Anders also did not establish that a severed-umbilical plan was equivalent to a lost-diver plan.

Nor did the Army Corps apply an unstated evaluation criterion. "Where an evaluation is challenged, we will examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria . . . ." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (internal quotation omitted). It is reasonable and consistent with the explicit lost-diver plan requirement for the Army Corps to expect an offeror to explicitly indicate what portions of its proposal it intended to be responsive to the lost-diver-plan requirement.

We conclude therefore it was not arbitrary and capricious for the Army Corps contracting officer to find that Anders's proposal lacked the required lost-diver plan.

As to the "outline of administrative and record-keeping procedures," the solicitation required each offeror's Safe Practices Manual to include such an outline. App'x 4784;

Addendum 2.  The solicitation also gave the following specific requirements for record-keeping:

> 14. <u>Record Keeping</u>[:] A record of all dives must be kept. An electronic copy of all dive logs, time logs, Job Hazard Analyses (JHA) or Job Safety Analyses (JSA) forms, a pre-dive safety meeting form, and a post-dive safety meeting form must be submitted to the [Contracting Officer's Representative] and the District Dive Coordinator within 24 hours after the completion of each day's dive.

App'x 4766.  In this respect, Anders's proposal stated, "Administrative & Record-keeping Procedures[:] The diving supervisor shall upkeep daily logs, activity logs, dive logs, and other [required] paperwork.  All team members must sign in an[d] verify dives and daily logs."  App'x 5979.

The SSEB did not record that Anders had submitted a compliant outline but remarked that "[f]orms and documents submitted under other requirements satisfy my confidence that this company has organized administrative and record keeping procedures." App'x 2151. But the contracting officer determined that "Ander[s]'s technical proposal should be more comprehensive for their 'outline of administrative and record-keeping procedures.'" App'x 2154 (citing Addendum 2).

The Claims Court determined that "Anders includ[ed] this [administrative and record-keeping] information in its proposal." App'x 11.  The court concluded that the Army Corps failed to "substantiate[]" its rejection of Anders's proposal on this ground and that the Army Corps's requirement for a more "comprehensive" outline was an undisclosed evaluation criterion.  App'x 11.

We do not think it was arbitrary to conclude that Anders's skeletal recitation of the record-keeping

requirements was an inadequate outline. The only portion of Anders's proposal explicitly discussing record-keeping procedures did little more than repeat the solicitation's requirements to keep dive logs and time logs in addition to unspecified "activity logs" and "other [required] paperwork." Stating that a "diving supervisor" will "upkeep" such documents does not amount to an outline. Nor does requiring the outline to be more comprehensive apply an unstated evaluation criterion. It is reasonable and consistent with the explicit requirement for an "outline of administrative and record-keeping procedures" to require Anders to propose comprehensive procedures. Addendum 2; *see Galen*, 369 F.3d at 1330. An agency must have the latitude to apply its technical expertise in making "discretionary determinations" without explicitly previewing every possible ground for technical insufficiency. *See E.W. Bliss*, 77 F.3d at 449; *see also Lockheed Missiles*, 4 F.3d at 958–59 ("Effective contracting demands broad discretion.").

Anders argues that the contracting officer should have deferred to the SSEB, which was "the board with the technical expertise." Appellee's Br. 26–27. The contracting officer overruled the SSEB to determine that Anders's proposal failed to submit an adequate record-keeping outline. We see no justification for treating contracting officers, who have the responsibility to determine technical compliance, as lacking sufficient technical expertise to differ with the SSEB.

We conclude that it was not arbitrary and capricious for the Army Corps to determine that Anders's proposal lacked the required outline of administrative and record-keeping procedures and that the Claims Court erred in its contrary determination.

Because we determine that two grounds support the Army Corps's evaluation of Anders's proposal as technically unacceptable, and even one such deficiency would

mean the Claims Court erred, we do not reach the third ground relating to the lack of a sample "completion report."

Quite apart from the issue of technical compliance, it was improper for the Claims Court to direct an award to Anders without the Army Corps having determined that Anders's proposed prices were "fair and reasonable" as required by the solicitation. App'x 4789. The Claims Court concluded that the prices were fair and reasonable because the Army Corps had been willing to pay similar prices in previous contracts. In the context of appeals from agency decisions, a "'reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.'" *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1154 (Fed. Cir. 2023) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). It was error for the Claims Court to make a price-reasonability determination when the Army Corps had made no such determination.

II

Having concluded that the Army Corps properly determined Anders's proposal to be technically unacceptable, we turn to Anders's two arguments before the Claims Court that the government violated the FAR. First, Anders alleged that the Army Corps failed to provide a substantive and independent review when it denied Anders's agency-level protest, violating FAR § 33.103(d)(4). Second, Anders alleged that the government's issuance of Amendment 7 to the solicitation violated FAR § 15.206(c) by including previously rejected bidders and violated § 15.206(g)(5) by failing to adequately describe the changes implemented by the amendment.

The Claims Court declined to address these arguments in its opinion granting judgment on the administrative record because of its conclusion that Anders's proposal was technically acceptable. App'x 8 n.2. The government argues that we should not reach the merits of these

arguments. Reply Br. 3 n.1. Anders urges us to reach the alleged FAR violations or, in the alternative, to direct the Claims Court to address them. Oral argument at 37:34–38:10.

Though we question whether the allegations of FAR violations, even if substantiated, would independently sustain any relief sought by Anders,[5] we decline to address the alleged FAR violations in the first instance and remand for the Claims Court's consideration. If the Claims Court determines that neither alleged violation prejudiced Anders in light of our holding that Anders's proposal was not technically acceptable, the Claims Court should grant judgment on the administrative record to the government.

## CONCLUSION

We conclude that the Army Corps did not act arbitrarily or capriciously when it evaluated Anders's proposal to be technically unacceptable. We reverse the judgment of the Claims Court, vacate the permanent injunction, and remand for the Claims Court to consider Anders's arguments regarding alleged FAR violations.

## REVERSED AND REMANDED

### COSTS

Costs to the United States.

---

[5] In particular, we do not see how any error in the issuance of Amendment 7 could benefit Anders since its claim was that it should have been awarded the contract under the original solicitation.